## SCHUBERT v. COWLES.

(Supreme Court, Appellate Division, Fourth Department. June 18, 1898.)

1. SEWER CONTRACTORS—NEGLIGENCE—SIDEWALKS—NONSUITS.

Defendant was constructing a sewer under a contract with the city making him liable for certain injuries caused thereby, and providing that all excavations and piles of materials should be so guarded by him as to effectively prevent accidents. On the street where plaintiff was injured by the slipping of a plank on which she was walking, caused by loose stones under it making it move, the dirt had been excavated and thrown on the sidewalk to the height of some seven feet, leaving only about a foot and a half on the inner side of the walk, on which stones and dirt had fallen, so that a plank was placed over them at the place of the ac-cident. There was no chance of conveniently going around such obstruc-tion. Such condition of the street had existed for about two months. The evidence was conflicting as to who put the plank in such place. *Held* error to grant a nonsuit.

2. SAME—PRESUMPTIONS.

Where a plank belonging to defendant, a sewer contractor, which had been used in connection with his work, was placed as a walk, over stones and dirt which he had thrown on the sidewalk, and was observed by his superintendent in that place for some time, and where it was his duty to have a plank or some other means in such place, to be used by the public, the jury may presume that he put the plank there, or knew of its being there, and suffered it to remain.

3. CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Contributory negligence is a question for the jury, where plaintiff was injured by stepping on a plank apparently safe, which had been laid on top of stones and dirt which had accumulated on the sidewalk, and where the plank was the only convenient way of passing along the walk, as she had a right to do.

Exceptions from trial term, Monroe county.

Action by Dora Schubert against Horace N. Cowles. A nonsuit was granted, and plaintiff's exceptions were directed to be heard in the appellate division. Reversed.

This action was commenced on the 8th of April, 1897, to recover damages for an injury to the plaintiff resulting from a fall upon a sidewalk on Rowley street, in the city of Rochester, on the 11th day of March, 1897. The complaint alleged that the defendant had unlawfully obstructed the sidewalk upon that street, placing large piles of dirt and stones thereon, almost covering the same, and had further obstructed it with boards and planks, creating a nuisance on the sidewalk, and carelessly and negligently making the same dangerous for travelers, and that the plaintiff, lawfully passing along said street and sidewalk, with due care, and without negligence on her part, was injured in consequence of said nuisance and the negligence of the defendant. The defendant answered, admitting that the plaintiff fell on the said street on the 11th of March, 1897, and denying other allegations in the complaint, and alleging that he was lawfully engaged in constructing a sewer in the street under a contract with the city of Rochester, and that the plaintiff had been guilty of contributory negligence. The case was tried at the Mon-roe trial term on the 5th of October, 1897, and resulted in the plaintiff's being nonsuited; and the plaintiff's exceptions to such nonsuit, and other excep-tions upon the trial, were directed by the court to be heard in the first instance

by the appellate division of this court, and that defendant's proceedings be stayed in the action until the determination by the appellate division of such questions.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Nelson E. Spencer, for plaintiff.
James Breck Perkins, for defendant.

WARD, J.    The defendant had a contract with the city of Rochester to construct a sewer along and under Rowley and Harvard streets, in the city of Rochester.    The contract was entered into December 26, 1896, and was in writing, and, after specifying the work and its details, provided that the defendant should—

"Take such precautions as may be necessary to guard all public and private property and persons from injury, and hereby covenants and agrees to indemnify and save harmless the party of the second part [the city] from all claims, costs, expenses, and liabilities accruing in consequence of any negligence, imputed negligence, or improper acts on the part of the party of the first part, either from not properly guarding and keeping guarded the work in progress, and the adjacent property and persons lawfully using the street, whereby injury to property or persons is caused during the prosecution of such work,· from the time of its commencement up to the time it is fully completed and accepted by the party of the second part. * * * During the progress of any and all of the work contemplated, the contractor will be required to prohibit all persons from riding or driving on any portion of the sidewalk on either side of the street after the excavation for the proposed sewer has been commenced.   The contractor will be held responsible for all damages arising from the use of said sidewalk for said purpose, and the amount of said damages will be estimated and deducted from the final estimate due said contractor.   To prevent the use of any sidewalk for public traffic of any kind, other than pedestrians, the contractor shall effectually guard such portion of the street with barriers sufficiently strong to afford the necessary protection, at his own expense.   All excavations, piles of materials, and work in course of construction shall be so guarded, both by night and day, at the expense of the contractor, as to effectually prevent accident."

Early in January, 1897, the defendant entered upon Rowley street, which is a street about 50 feet in width, excavated for a sewer about 5 feet wide, and in some places 19 feet deep; throwing dirt and stones taken from the excavation upon the east sidewalk in Rowley street, which was a stone sidewalk from 4 to 5 feet wide, and occupying all of the sidewalk at the point of the accident, and for some distance each side at that point, with dirt and stones to a height variously stated by the witnesses at from 7 to 12 feet, leaving but from 1 foot to 18 inches of the sidewalk next to the abutting owner, upon which had fallen stones and dirt to such an extent that a plank about 1 foot wide and about 12 feet long had been placed over these stones at the place of the accident.   This plank was placed opposite the premises and residence of a Mr. Braman, whose house was a three-story house, used as a flat, fronting upon the sidewalk 40 or 50 feet, and about 10 feet from the east side of the sidewalk, the space between the house and sidewalk being a grass plat, which, from the operations of opening the sewer, had become tramped and muddied, and, when the ground had thawed, ankle deep, as one witness expresses it; so that the only way for pedestrians to pass that

point with any apparent safety, and without getting into the mud and wet east of the sidewalk, was to walk upon this plank, which was done by the people generally who passed that way. At the time of the accident this situation had existed for about two months. The plaintiff, an elderly lady, who supported herself by going out and doing work for such people as employed her, found it necessary to pass along this walk; and when she was upon the plank she slipped from the board, and fell down upon the sidewalk, and was seriously injured. The fall was in consequence of the loose stones under the plank, which caused it to move and throw the plaintiff. There was evidence tending to show that but one end of the plank laid upon the sidewalk proper; the rest of the plank being a little east of it. Witnesses testified that the plank appeared as if it was safe to walk upon as pedestrians passed along, and the plaintiff testified that she thought it would be safe to pass over it; and it appeared from other testimony that if she had gone in upon the premises of Braman, instead of walking upon the plank, she would have been compelled to walk in the mud and wet. The defendant had boards and plank in the vicinity, and this was one of them. One witness testified to seeing some workman, prior to the accident, adjusting the plank with his feet. Another witness testified that on the morning of the accident some of the workmen were working at the corner of Rowley and Harvard streets, and that there had been workmen around there prior to that. Another witness testified that she saw a workman handling these boards that were used on the sidewalk at the side of the dirt pile directly after the accident. The defendant's superintendent who had charge of the work testified that this was one of the boards that belonged to the defendant; that he had seen the board there before and after the accident; that it might have been there a week; that he saw it every day, and left it there. But he denied that it was put there by his directions, or defendant's, as far as he knew, and claimed that the owner of the house (Braman) told him that he (Braman) had put it there, which Mr. Braman denied.

Upon motions of this character, the evidence must be stated as favorably to the plaintiff as the facts will fairly warrant, or, as some cases put it, "assuming that all the testimony of the plaintiff is true." The foregoing statement presents a case which we think entitled the plaintiff to go to the jury upon the issues in the case. The defendant's only justification for entering upon the street at all, and placing and keeping it in the dangerous condition disclosed by the evidence, was his authority from the city to construct the sewer; but in the exercise of that authority, as will be seen from the provisions of the contract, he was required to do the work in such a manner as to make the sidewalk safe for pedestrians, and that "all excavations, piles of materials, and work in course of construction shall be so guarded, both by night and day, at the expense of the contractor, as to effectually prevent accident." Without exercising the caution and care prescribed in his contract, if accident resulted to pedestrians in consequence of the defendant's negligence the contract afforded him no protection. Leaving the sidewalk and street in this unsafe and unguarded condition for a period of two months, the jury may

well have found, was gross negligence on the part of the defendant. He knew that the sidewalk was being constantly used by persons who were rightfully there; he knew the obligations of his contract, and the duties he owed to the community, whose necessities or interests required them to pass that way; and when he confined the pedestrians between a muddy and wet place on the one side, and a vast pile of stones and dirt on the other, and permitted only a plank to walk upon, he certainly should have had that plank secure and safe, and not left it in a condition so dangerous to the persons using it. But it is urged by the learned counsel for the defendant that it did not appear that this plank was put in this position by the defendant, or through his agency, and therefore he should escape liability. The evidence we have referred to upon that subject was sufficient to carry that question to the jury. The plank was the defendant's property. It was used in connection with the work. It was there for some time, under the observation of the defendant's workmen and superintendent. It was the duty of the defendant to have a plank or some other means there, to be used by the public; and the presumption may well be indulged in that the defendant put the plank there, or knew of its being there, and suffered it to remain. Placing it there, or suffering it to remain there, he should have guarded it to prevent accident. In Gulliver v. Blauvelt, 14 App. Div. 523, 43 N. Y. Supp. 935, where an injury was caused to a riding horse by his stumbling over a chain by which a cow on one side of the highway was fastened to a stake, it was held that, the cow being the property of the defendant, it may be presumed that she was placed in the highway for his benefit and on his account, and, notwithstanding a denial by two disinterested witnesses that the defendant was not responsible for the cow being thus fastened in the highway, the question was for the jury. And see Springer v. Schnitzler, 122 N. Y. 646, 25 N. E. 957; Norris v. Kohler, 41 N. Y. 42.

The learned counsel for the defendant makes the point that the plank was not upon the sidewalk, but upon the adjoining premises of Mr. Braman, and therefore the defendant is not liable. The sidewalk is a part of the street, and the defendant's answer admits that the plaintiff fell on said street on the 11th day of March, 1897. But, independent of this admission, if the defendant so occupied the sidewalk as to force this plank upon the adjoining premises, thus inviting the public to use it in the place of the sidewalk he had obstructed, and the accident occurred in consequence of not keeping it properly guarded, the defendant cannot escape liability by the bare fact of a portion of the plank being a little off of the east edge of the sidewalk.

The remaining question is whether the evidence disclosed that the plaintiff was guilty of contributory negligence, as a matter of law. We think that question was for the jury. It will be seen from the above statement of facts that the only apparent safe way of passing along this walk at the time of the accident was over this plank; that it appeared safe; the unsafe condition from the stones under it was not known to the plaintiff until the accident occurred; the necessities of her employment called her that way on that occasion,

and she had a right to use that portion of the sidewalk which the defendant had permitted. That is to say, she had the right to have that question submitted to the jury. We express no opinion upon the facts, as we do not desire to prejudice the defendant's case upon another trial. It is true that the upturned condition of the street and sidewalk was apparent to the plaintiff, and she should have exercised due care with reference to that condition. The question is, did she do so? And that question was for the jury. Bullock v. Mayor, etc., 99 N. Y. 654, 2 N. E. 1, is a strong authority to sustain the plaintiff's contention in this respect. In that case the flagging on the sidewalk was broken up by a contractor, and the street became muddy, and persons using the walk had thrown down pieces of flagging to step upon. The plaintiff was injured while passing along this broken place, and the court says: "The plaintiff had the right to use this walk, although she knew its condition; and whether she was guilty of any carelessness that contributed to the accident was also a question for the jury." And we may profitably consult upon this subject Walsh v. City of Buffalo, 17 App. Div. 112, 44 N. Y. Supp. 942; Stone v. City of Poughkeepsie, 15 App. Div. 582, 44 N. Y. Supp. 609; Evans v. City of Utica, 69 N. Y. 166; Gillespie v. City of Newburgh, 54 N. Y. 468.

These views lead to the conclusion that the plaintiff's exceptions should be sustained, and a new trial granted, with costs to the plaintiff to abide the event. All concur.